# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DERRECK SUNDERLAND, | 1:09-cv-00092-OWW-DLB (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JAMES D. HARTLEY, | [Doc. 1] |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## BACKGROUND

Petitioner is currently incarcerated in the California Department of Corrections and Rehabilitation ("CDCR") following his conviction for second degree murder. Petitioner was sentenced to life with the possibility of parole. Petitioner does not challenge the validity of his judgment; rather, he challenges the Board of Parole Hearings' (hereinafter "Board") 2007 decision finding him unsuitable for parole. Petitioner contends the Board's decision resulted in a violation of his Due Process rights.

Petitioner filed a state court petition in the San Francisco Superior Court challenging the 2007 Board decision. (Exhibit A, to Answer.) The superior court denied the petition finding some evidence to support the Board's decision. (Id.)

Petitioner then filed a state petition in the California Court of Appeal, First Appellate

District. (Exhibit B, to Answer.) The petition was denied because the court had previously rejected the claim that the denial of parole violated Petitioner's plea agreement and Petitioner failed to state "a prima facie case for relief" with respect to the other claims. (Id.)

Petitioner also filed a state petition in the California Supreme Court, which was summarily denied. (Exhibit C, to Answer.)

Petitioner filed the instant federal petition for writ of habeas corpus on September 26, 2008. (Court Doc. 1.) Respondent filed an answer to the petition on March 27, 2009, and Petitioner filed a traverse on April 30, 2009. (Court Docs. 16, 17.)

## STATEMENT OF FACTS[1]

On October 15, 1982, Petitioner met with the victim who asked him if he had a place to stay. They decided to rent a motel room and the victim wanted to engage in homosexual acts with Petitioner. The two went to a store downstairs from the room where the victim bought Petitioner a sandwich and a beer. They returned to the hotel room and went to bed. Petitioner believed the victim was asleep and tried to take his wallet from his pants. The victim woke up and grabbed Petitioner. A struggle ensued and when the victim gained the upper hand, Petitioner stabbed the victim multiple times with a pocket knife and fled the scene. The next day, the manager of the hotel complex found the victim dead on the floor covered with blood. Medical reports demonstrated that the victim died from multiple stab wounds, transecting of the internal jugular vein and the left common artery. Petitioner was not apprehended by police until several months later.

## DISCUSSION

I.   Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

---

[1] This information is derived from the transcript of the 2007 Board hearing which quoted from the Probation Officer's Report.

Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or

involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), cert. denied, 537 U.S. 859 (2002), rehearing denied, 537 U.S. 1149 (2003).

In this instance, the last reasoned decision of the state court was that of the California Court of Appeal, First Appellate District which denied the claims as previously rejected and for failure to state a prima facie case for relief.  Exhibit B, to Answer.

II.     Review of Petition

A parole release determination is not subject to all the due process protections of an

adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the Board is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an

unreasonable risk of danger to society if released from prison.

     (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit A, Transcript.

The California Supreme Court clarified the standard of the review applicable to parole decisions by the Board or Governor in In re Lawrence, 44 Cal.4th 1181 (2008). The applicable standard "is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." Id. at 1212 (emphasis in original and citations omitted). As to the circumstances of the commitment offense, the Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

Id. at 1214.[2]

---

[2] To this end, the Court recognized that its prior determination of "a focus upon the egregiousness of the commitment offense to the exclusion of other relevant evidence has proved in practice to obscure the core statutory emphasis upon current dangerousness, the manner in which courts apply the some evidence standard in evaluating

6

At Petitioner's 2007 hearing, the Board found him unsuitable for parole based on (1) the circumstances of the commitment offense; (2) prior criminal history; (3) unfavorable psychological report; (4) insufficient vocational training; (5) limited participation in AA/NA; and (6) inadequate parole plans.

With regard to the commitment offense, the Board found it was carried out carried out in an especially cruel and callous manner in disregard for human suffering and life.[3]  Petitioner rented a hotel room with the victim, who had been drinking.  After the two returned from the store, the victim fell asleep.  Petitioner was aware that the victim wanted to engage in homosexual acts with him.  However, Petitioner believed the victim would pass out from his alcohol consumption and planned to rob the victim at that point.  When the victim awake as Petitioner was attempting to take money from his pocket, a struggle ensued and Petitioner stabbed him 25 times with his pocket knife.  The autopsy report reflected that the wounds indicated the victim most likely lingered for a while before he died. (Transcript, at 123.)  Petitioner fled the scene and was not apprehended until several months later.

The Board also considered Petitioner's criminal history, which includes convictions for carrying a concealed weapon, battery, and involuntary manslaughter. 15 Cal. Code Regs. § 2402(c)(2).  At the age of 13, Petitioner admitted that he burglarized several homes. (Transcript, at 43-44.)  In 1979, he was convicted of battery on a person, while drunk and disorderly. (Id. at 42, 49-50.)  Then in 1980, Petitioner was convicted of involuntary manslaughter, a crime

---

the evidentiary value of the gravity of the commitment offense requires some clarification." In re Shaputis, 44 Cal.4th 1241, 1254 (citing Lawrence, 44 Cal.4th at 1213-1214.)

[3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:
  (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
  (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
  (C) The victim was abused, defiled or mutilated during or after the offense.
  (D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
  (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

committed under circumstances very similar to the commitment offense. (Id. at 42, 45-48.) While Petitioner was standing at a bus stop, a man offered him a place to sleep. Petitioner was drunk at the time and agreed to go with the man. When the two arrived at a hotel room, the victim told Petitioner that the two would have to sleep in the same bed. Petitioner stated that he wanted to leave but the victim attempted to get him to stay. The victim proceeded to tell Petitioner that he wanted to have sex with him and Petitioner said no. Petitioner pulled out his pocket knife and told the man he was going to leave. When the victim tried to take the knife, Petitioner stabbed him multiple times resulting in his death. (Id. at 45-48.) Petitioner served two and one-half years for this offense before being released on parole. (Id. at 48.) At the time of the commitment offense, Petitioner had absconded parole and was living on the streets abusing LSD and marijuana. (Id. at 48-49, 51.) Given Petitioner's violent criminal history, some evidence certainly supports the Board's finding that he has a continuing and escalating pattern of criminal conduct and supports the finding that he remains a risk to public safety if released.

      The Board also found that Petitioner's programming was limited. Although Petitioner had engaged in self-participation in Alcoholics Anonymous and Narcotics Anonymous ("AA/NA"), he had not engaged in any group/social setting to gain further understanding. Petitioner was not currently in AA/NA, and had only completed two months in 2004. (Id. at 65-66, 82.) The Board was troubled by the fact that Petitioner did not participate in group AA/NA meetings and had not worked on getting back into the mainstream of society. (Id. at 98.) In addition, Petitioner did not have much vocational training. During his entire incarceration, Petitioner had only completed the Electronics Core in 1993. (Id. at 73-74.) Given Petitioner's history of tumultuous and unstable social history and abuse of alcohol and drugs-which was one of the primary factors in the commitment offense, some evidence supports the Board's finding that further participation in programming is necessary before he is no longer a threat to public safety.

      The Board considered that the psychological report was unfavorable because it assessed Petitioner to be a moderate degree of risk to the public. The psychologist assessed Petitioner to be in the low end of the high range based on the historical factors and in the low range on the clinical and risk management factors. (Id. at 85.) In addition, Petitioner's "potential for general

non-violent recidivism is high when compared to incarcerated inmates." (Id.) Petitioner's overall risk is in the low end of the moderate range. (Id. at 86.) While there are portions of the record that are favorable to Petitioner, the fact remains that some evidence supports the Board's finding that his risk assessment as moderate is unfavorable. See e.g. Tidwell v. Marshall, 526 F.Supp.2d 1031, 1042 (C.D. Cal. 2007) (concluding that psychiatrist's conclusion that an inmate posed a moderate risk for future violence provided some evidence to support denial). See In re Lawrence, 44 Cal.4th at 1212, 1221 ("the relevant inquiry is whether the circumstances of the commitment offense, when considered in light of other facts in the record, are such that they continue to be predictive of current dangerousness many years after commission of the offense." "It is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public.")

Contrary to Petitioner's claim, the Board also considered the positive factors supporting suitability, including obtaining his GED, AA degree, participation in self-help programming, and positive employment history. 15 Cal. Code Regs. § 2402(d). However, on balance, these positive factors did not outweigh the factors of unsuitability.

Petitioner contends that the Board's decision violated his plea agreement because it relied on factors beyond the minimum elements of second degree murder. Pursuant to section 2402, the Board can consider all relevant reliable information. 15 Cal. Code Regs. § 2402(b). In addition, Petitioner has presented nothing to show he was promised he would be released after a certain amount of time. Indeed, his sentence was for 15-years-to-life *with* the *possibility* of parole. Moreover, Petitioner has not been denied parole forever, rather the Board set another hearing two years out and encouraged Petitioner to continue making positive progress so that he may one day be eligible for parole.

Petitioner also claims that the Board's continuing reliance on the immutable circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334 F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." This is simply not the case here. The Board did not rely solely on the commitment offense or Petitioner's previous record of violence. The Board also found Petitioner's failure to program sufficiently and unfavorable psychological report to be significant factors indicating unsuitability.

The Board's findings are supported by "some evidence" and it cannot be said that the state court's resolution of Petitioner's claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and,
2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 16, 2009**              /s/ Dennis L. Beck
                                          UNITED STATES MAGISTRATE JUDGE